Please, if the attorneys that are going to argue, would you step up and identify yourselves for the record. Kristen Barnett, here for the appellant. Jonathan Beyer, here for the City of Chicago. What's your last name? Beyer, B-Y-R-E-R. Are you on the briefs? I am not. I'm standing in for Mr. Henriquez, who is unable to present arguments today. Oh, okay. So he was on the briefs. Yes. All right. Counsel, do you want to begin? Yes, thank you, Your Honor. And if you want to save some time for rebuttal, it's Ms. Barnett. It is, thank you, yes. And I would like to reserve two to three minutes for rebuttal. All right. May it please the Court, Counsel, my name is Kristen Barnett, and it's my privilege to be here this morning before you on behalf of the appellant, Dominique Betts. And thank you for this opportunity. What we have here is a situation where rules and policies of tradition have come to an anomalous point. And it's such that the City of Chicago can file a motion to dismiss or a motion for summary judgment without allowing for the fair opportunity of the plaintiff to refute or dispute claim qualified immunity. And the real question here is whether the plaintiff was afforded a fair opportunity to develop facts to contest whether or not officer, defendant, Daryl Smith, was in fact enforcing the law at the time this accident occurred. And because this is not a clear case of enforcement of the law. It's a gray area involving surveillance. And as you know, public immunity or tort immunity does not attach or apply in all cases where there's an officer that's acting on duty. It only applies in situations or acts or missions where he's executing or enforcing the law. Well, are you saying that there's no suggestion or it's incorrect to argue that surveillance is actually enforcing or executing the law? Well, there is no case law that I've found that suggests that surveillance is in fact enforcing the law. There is a case law, Fitzpatrick, that says that when you're actively investigating a car accident, that that is decidedly enforcing the law. Well, what about this then? Couldn't you argue that he was actively investigating a narcotics sale? Well, I really don't know. It's unclear what the facts are in this case because we're denied the opportunity to take the deposition of the officer Smith. All we have is a bare bones affidavit and interrogatories. Well, under the rules of discovery for cases under 10,000, didn't the court have the authority under it? I don't know what number it is, but to deny a deposition? Don't they have separate rules for cases under 10,000? Well, I think that where there's no discovery in a case, there's generally no discovery in a small claims case, where you're put in a position where the case can be determined, it's outcome determinative, and you have an affidavit like we have here and you have interrogatories like we have here, it puts the opponent in an unfair position to dispute that because it's a unilateral position that the opponent cannot actually give personal knowledge of. Let me ask you this. Is the only difference between the subsequent affidavit and the initial interrogatories is that he put them in the first person? Is that the only difference? There's no change in the statements, right? It's only third person to first person, Your Honor. Right. So there's no real difference in the affidavit. He didn't add any new information. No, it was just that he was on duty, and he was on duty as a surveillance officer, which as we know, just because a police officer is on duty and doing an act while on duty does not necessarily mean that he's enforcing the law. So you would compare this maybe to that leak case where the officers were on routine patrol? Well, this officer is not on routine patrol, but yes, Your Honor, you're correct. I would compare it to leak where the officer sees something, they believe that there's a person who's involved in drugs or has a history of being involved in illegal activity and reverses the vehicle, injuring the person behind them, and then the court found that this person was not enforcing the law at the time of that accident. And I believe that's also listed in the Hudson case. Yes. And also for you, Your Honor. Oh, I'm just curious. I'm sorry. One of the interrogatories went to whether or not the officer had any food in the car. Now, those were questions that the plaintiff supplied, right? That's correct, Your Honor. That was going to whether or not the officer was perhaps engaging in a break and then was not engaging in a break. He was leaving his break period while enjoying a snack or lunch during some downtime. Okay. And if you compare this to the other cases, I believe they're listed in the briefs, such as the Bozen case. There's a distinction. What we have here is a situation where I can't really tell you what this case is about entirely. Bozen was a reported burglary. It was a reported burglary, but what I can tell you more about is what this case is not. It is not a reported burglary, according to Bozen. It is not, according to Brewett, which is responding to shots fired. It is not that. It is not Thompson, where there's an unruly crowd that the officer is responding to. It is not Fitzpatrick, where there's an officer actively investigating two other cars and then is struck by a third car, causing injury to one of the two other cars. It is not Glover, where there's an arrest being effectuated. It is not Tropachco, where the officer is. Do we know if an arrest was ever effectuated in this case? I believe that we do not, and that was one of the questions that was posed in the interrogatory. What we do know from the interrogatories was that at the time of the interrogatories, there was ongoing investigation. That is correct. Do we know if he saw any crime being committed? The interrogatories do not go into whether or not there was a crime that was being committed, just that he was about to. And this is important because the interrogatories state that he's preparing to go be part of a surveillance team versus actually being actively a part of a surveillance team. Preparing is not actually surveilling. And we don't know the details to know what actually is going to occur next or what is actually occurring. Is this a stationary surveillance or is it a moving surveillance? I don't want to speculate. The interrogatories say that he is preparing to join a team. He receives a radio call, or not a radio call, a Nextel call, which is different. And he's preparing to join the surveillance team. It's not clear that he sees the vehicle behind him or he does see the vehicle behind him. He intentionally strikes her car or he accidentally strikes her car. So it's hard to determine what's going on and where he's going. Surveillance can just be to observe who people are making contacts with. Well, does he even say that he's actually seen this target? Does he even say that? No, Your Honor. What about conclusory information contained in an affidavit or an interrogatory? Do we accept conclusions for purposes of 2619 motion? I would suggest that accepting a conclusion is something that I think it's up to the court. No, our statute of rules doesn't allow it, but whatever. I don't think it's up to us. Well, the fact of the matter is you would like to have more information rather than less information when you're making an outcome determinative ruling in a case. Did you move to strike anything that you thought was conclusory? We did not. Instead, it was argued orally before the trial court. That it was conclusory? I believe there was arguments that it was insufficient, and they stood on their initial response because there's not more that could be said, and Ms. Betz could not submit an affidavit refuting or disputing any of the things that were submitted by the officer or the FIN. So, as far as what a deposition could have done in this case, as you know, versus interrogatories or affidavits that are usually prepared by an attorney in some cases, a deposition would allow for an ongoing discourse where the questions are kind of led by what the answers are to the questions. It allows for interpretation of facts, how the officer interprets it, and how you can dispute his interpretation of it, observation, bias, memory of the facts, and those are all the things that we were hoping a limited deposition would be able to have a full... What do you mean by a limited deposition? A limited deposition... Limited by time, by scope, what? Scope, Your Honor, with regard to what he was doing as far as his job. Limited to questions regarding tort immunity and perhaps even for Wolfel and Wong because we cannot amend a complaint in this case to add Wolfel and Wong conduct without any bases. That would be improper. Anything further? I think your brief on multiple pages challenges the conclusions, and I don't... But in any event, is there anything else you wish to add? If there's nothing further, I would wish to take my seat at this time. Thank you very much. All right. Counsel, your name again. Jonathan Byer, B-Y-R-E-R. Good morning. A little complicated name. May it please the Court, this Court should affirm the judgment of the Circuit Court. I'll begin with addressing the Rule 191 issue. There's nothing anomalous about the discovery restrictions that were imposed here. Rule 191 sets forth explicitly the requirements for obtaining additional discovery beyond affidavits. The affidavits contemplated specifically in Rule 2619. Well, first, what was the City's motion? Was it a 615 or a 619 motion? If it was 615, you don't need affidavits. It was a 619. It was clear from the context that it was a 619. It raised immunity. It was very clear. It appears to have been simply mislabeling. And as the law is clear, it's been held repeatedly. Ms. Betz acknowledges in her brief that the substance controls over the labeling. Well, you had previously filed the correct 2619. Yes, that's why it appears to be nothing more than an accidental mislabeling. But you did mislabel it. No, there's no dispute there, Your Honor. Now, didn't the plaintiff contest her ability to, in any way, contest these answers to the interrogatories? There is nothing that I'm aware of in the record. There is a substantial portion of the record missing. Transcripts are not in the record, and under law, any presumptions from that are in favor of the prevailing party that the order entered. All right. Well, then let me ask you. We'll take what we have. Is there any difference between the affidavit and the initial interrogatories, other than replacing the third person with the first person? Between the affidavit and the initial, the affidavit and the interrogatories. And the five interrogatories. Any substance, anything different? There's this, I believe that there, yeah, I have the affidavit and the interrogatories in front of me. The interrogatories expand greatly on what was in the affidavit. Oh, which was first? The affidavit? The affidavit, to my knowledge, was first. First. Oh, all right. I may be incorrect, but I believe that they were first. There was an affidavit that there was limited discovery allowed in the interrogatories. All right, that's right. It basically says, at the time of the accident, I was on duty, acting within the scope of my duties. And then it also says I was on duty as an undercover surveillance officer in a narcotics transaction. You're referring to the affidavit, correct? Yes. See what he said? He said if I was sworn, I would testify as above? Yes. Okay. Well, now, isn't this basically a conclusion? Where's the fact here? Well, for instance, the fact that he was on duty is definitely a fact. All right, well, that wouldn't be enough under the statute, would it? Definitive answer to the question whether you're entitled to immunity. Oh, of course not. I'm just trying to go through and be as responsible as possible. So what crime was being committed that day? Sorry. What crime had taken place on the day of the surveillance? Apparently because the surveillance could not be completed, it's unclear if a crime was committed that day. But it is unnecessary under the law that a crime be committed. Right, but don't we have to know what he saw? I mean, he doesn't even say what he saw. He doesn't say anything, really. He just says he was on surveillance. So, I mean, how do we know what was going on? That is where the interrogatories fill in any gaps that were filled. All right, well, here's the first interrogatory, described in detail the police action you were taking. When you placed your automobile in reverse, Officer Smith was conducting surveillance pursuant to a narcotics investigation. Is that a conclusion or is that a fact? That is a fact. Conducting surveillance, you would argue, is a fact. That is a fact. And is that enough to give you immunity, that one fact? We do not believe it's necessary that that one fact be sufficient because there are all five answers that were in-depth explained. In-depth, my apology. Do we even know whether he saw this target from the answers? It is not clear from this, but he was part of a team. Do we know if the team saw the target? That is in the very next sentence. I'm referring to the interrogatories where it is in the first person. It says the target had been identified from previous undercover drug buys. That means that this target is someone that has been identified. So there is this target out there. There is a target. But there's nothing in that that says that they saw him that day or that they were even watching him. Is there? Previous paragraph, Your Honor. What? Second sentence of the previous paragraph in answer one. A team? Our team was following the target northbound on Costner and I was requiring to do a takeaway. Okay. Now, is that enough to give you immunity? I believe this entire statement is enough to give immunity. Officer Smith was part of a team. He was not merely sitting there. Plaintiff insists on characterizing him as merely sitting there when there is nothing in the record to indicate that. He was part of a surveillance team. And surveillance, as should be clear, is a team effort in many circumstances. And you're saying as a matter of law that surveillance automatically takes this case out of the immunity? Or it places you where you have immunity. I'm saying it the wrong way. I believe so. Active participation in a surveillance operation. What case would you cite for that that would say on a motion to dismiss that you're entitled to immunity? I'm not aware of any cases saying specifically surveillance. There is, for instance, in the Leakes case, the court said they did not intend to take away immunity for active investigations. And surveillance is obviously a key component of investigation, especially in the kind of transaction I issue here, drug transactions between individuals. So you would distinguish Leakes from this case? Yes. Now, how is this person whose car is damaged after you file a motion to dismiss in any way supposed to be able to counter his statements that I was working surveillance? That is specifically set forth in Rule 191, which governs additional discovery, the specific kind of additional discovery that was sought here. Rule 191, paragraph B, says, if the affidavit of a party says that they were unable, that any of the material facts which ought to appear are known only to persons whose affidavits a fiend is unable to procure, or by reason of hostility or otherwise, naming the persons and showing why their affidavits cannot be procured and what a fiend believes they would testify to have sworn with reasons for that belief. So you're saying they gave up on that? They gave up. That is exactly, exactly what Ms. Vest did here. Well, there was a request made before the trial court to take a deposition, wasn't there? There was a request, but there was no showing of compliance. There was no 191B affidavit? There was never one. If there was one, there was not in the records. There is not one. Now, do you think that we're bound by your conclusions? By my conclusions? Yes, the conclusions that are pled in the answers to the interrogatories and the affidavit. If we find that these are mere conclusions and not supported by fact, are we bound to accept that because the trial court dismissed this case? Well, Rule 2619 and the relevant accompanying rules are clear that conclusions are not appropriate. But this, we do not, to be clear, we do not rely solely on the affidavit. What else do you rely on? The affidavit and the interrogatory. Right, I know. I looked at the interrogatories. I don't know what he was doing. I don't know what he saw. All he said was, I was conducting surveillance and I was going to do a turnaround. That's all. I don't know what he saw. I have no idea if there was a man on the street. I don't know if he observed any drug transactions. I don't know what he saw. He doesn't tell us. He just says, I'm on surveillance and I was about to do a turnaround and our team was doing a surveillance. So to me, that's all conclusions. I have no idea what they were surveilling. Were they watching drug transactions? Were they watching people on the street? Was there a hand-to-hand transaction? I mean, these are things that the Leake case pointed out. The difference about all these other cases is there's not a single case that was dismissed on the pleadings based on conclusions in an affidavit and more conclusions in interrogatory answers. With respect, we disagree that these are conclusions. For example, paragraph 5, answer to question number 5, says specifically what Officer Smith was doing. He was part of a surveillance team for a group of targets suspected of distributing narcotics. The plan was to observe the target in order to ascertain where he was purchasing narcotics and to use that information to, there's a title there, for a planned undercover drug buy from the target later that day. This was part of the initial investigation to follow. It's very clear what they were doing here. It is not conclusive. Surveillance is not. Well, it says the plan was to observe the target in order to ascertain where he was purchasing narcotics from and to use that information in preparation for a planned undercover drug buy. Correct. Meant to take place later that day. Right. All that does is say what their plan was or what their target was to do. But it doesn't say they did any of this. And it doesn't say he saw anything or anyone. Well, Your Honor, it had to say that that was the plan because obviously the surveillance was interrupted by this unfortunate accident, by the accident here. Individuals were following the target, the unnamed target. Well, that's not really clear from any of this. Your Honor, answer one. Our team was following the target northbound of the Costner and I was preparing. I received a communication to take over the surveillance. Where are you reading from? This is answer number one to the interrogatory. Our team? Where is that? Our team. That is in the second sentence of answer one in the answers to interrogatories. I was conducting surveillance pursuit for a narcotics invention. The question was describe in detail the police action. Question one in the interrogatories. Okay. The interrogatories I have must be different. Could you read that again? So the question was describe in detail the police action we're taking on December 4th, 2010. Some additional detail. The answer provided here, I was conducting surveillance pursuant to a narcotics investigation. All right. That's right. I'm looking at the first set where he was describing it. I apologize. Because they were supplemented, I have these supplemented here. Yes. So could you read that, what you just said? I was conducting surveillance pursuant to a narcotics investigation. Our team was following the target northbound on Costner, and I was preparing to do a takeaway. A takeaway is a general term for when a target goes. I was preparing. He said what? I was preparing to do a takeaway. And to clarify, a takeaway is generally when a target is on the move. It's a generally used surveillance term when a target is on the move. I understand what a takeaway is. Okay. My apologies. Just to be clear because it was not defined in the action statement. Moving out of my parking spot to take over the surveillance team. And from these interrogatories, it is clear that Officer Smith was performing as part of a team. Individuals were following a target, and Officer Smith was preparing to take over for them and continue the surveillance from a certain point where he was stationed. And what case would you say shows us that this was execution of the law? It wasn't a leak. What would it be here? I'm unaware of any cases. What was the law that he was executing? Well, this was the law against, you know, the general duties. You know, general duties do not amount to executing the law. So you tell me, because you're the one that won the motion to dismiss, you tell me how he was executing the law when he was part of the team. He was executing or enforcing the law by performing surveillance to identify the members or participants in a drug sale. And the law he was executing was the General Illinois Code against illegal narcotics. In leak, that wasn't sufficient. Well, but there's language in leak, isn't there, that says that we're not saying here that participating in investigations is not imminent. In your position, is he participating in a specific investigation on a specific individual? That is correct, and that is the exact language from leak that I would rely on here, that investigations fall within enforcing and executing. If investigations do not fall within enforcing and executing, then there is an enormous hole in Section 2-202. I don't know if there's a hole. It's just that the question is whether when you say you're doing something and you're concluding that you're conducting a surveillance but you don't provide any facts about what you saw or observed, that that should warrant dismissal as a matter of law and grant you immunity. That's my question. I don't know that this statement that we were doing surveillance of a target that we were hoping later might buy some narcotics somewhere, that that should be enough for the trial judge to say as a matter of law, you're entitled to immunity. Your Honor, to respond, there is no requirement that Officers Smith have seen a crime happening. I mean, that is clear from the cases in which we cite in our brief, a burglary alarm, a report of a burglary. The officer did not see a crime occur, but there was still an active enforcement or execution of law. No, but wasn't he assigned to investigate the burglary? Wasn't there a fall of a crime in progress? But that's no different here because the officers... No, because we don't have any facts about what the team observed. There's nothing. We don't know what they saw other than they saw this target and they were hoping later they'd see him do something, but they never explained what he did in the first place. But I'm unaware of any case that requires that an officer say what he saw to be considered enforcing or executing the law. No, I just think you need facts, that's all. I don't think that there's enough facts. I don't know that the court gave really any discovery here at all, but the answers to me are conclusory, and we don't know what they saw. But, Your Honor, it is clear that this was not mere duty, and that is the line that has been drawn in the case. It's mere duty, mere driving around in your car just... Well, if they're undercover and every day they go out and look for drug dealers, that's their duty. That doesn't mean they've enforced the law or they've executed a particular law, does it? But this was not just wandering around looking for someone breaking the law. Well, I don't know what it was because it doesn't tell us what was going on. It just says we were looking at a target, we hoped he was going to buy some drugs later or we were going to make an undercover buy later. A target that had been identified as a participant in a legal narcotics activity and that was being followed, as would be standard in a drug investigation, to follow that target, maybe there are more individuals, maybe there's a larger... Do you have any case that you can cite to us where the immunity was granted on a motion to dismiss under facts like this? Is there a single case? I'm unaware of any cases. They're not cited in our brief. But the law is clear. It is executing or enforcing the law. Officer Smith was not merely on duty. He was a member of a team. He was backing up the members of a team conducting surveillance. He was playing an active role in that surveillance. Whether he had the chance to see anything or not, he was playing a necessary role to that surveillance. And those facts are clear from these interrogatories. And for Ms. Betts to attain reversal on an argument that was not raised in response to the motion... Well, what do you mean wasn't raised? What wasn't raised? Any complaint with the sufficiency of these... Complaint about the lack of discovery? Complaint about the sufficiency of interrogatories? Forget about the discovery. Didn't she oppose this motion? Didn't counsel oppose the motion? She opposed it and said that the facts in the interrogatories showed definitively that he was not enforcing or executing the law. Did not say that they were insufficient. Did not move to strike. Did not complain that more discovery was necessary. And most importantly, did not file the necessary 191 affidavit, which... So how were they opposing this again? She merely rested on the record. There was no response file to the motion? There was a response file, but it rested on the record. Did not say that there was a problem with the interrogatories in themselves. So I thought that was the whole complaint, that there wasn't enough here. But it was not that they were conclusory or that they were insufficient in a legal sense in and of themselves. All right. Okay. That was an argument that was raised for the first time, just as the due process argument was raised for the first time. And to this day, Ms. Betz has never explained how she complied... She's never explained compliance with Rule 191. She's never explained why she believes additional information. She merely wants to engage in a phishing expedition. And that is specifically what Rule 191 is meant to prevent, by asking specific sworn affidavits explaining what they expect to find and why. And to this day, we've had no explanation for what she expects to find or why. What additional information would satisfy her, and why she believes that she can get it by using what she refers to as a limited discovery deposition, but characterizes as anything having to do with this incident, which doesn't seem that limited at all. If this Court has no further questions, we respectfully request that you infer from the judgment of the circuit court. Okay. Thank you. What was your response to the motion to dismiss? That the affidavit or the interrogatories... First of all, the affidavit was insufficient, and the interrogatories were insufficient to support granting of a motion to dismiss in this case, on the basis that the case law did not speak to a particular set of facts in this case, and the baseline was that it was simply insufficient for what we were given to be able to respond. Ms. Betz did not write an affidavit. He is correct. Ms. Betz could not have written an affidavit that could have done anything to dispute what Officer Daryl Smith put in his interrogatories. How do you get around the fact that she didn't file a 191B affidavit? Your Honor, we did not file a 191B affidavit in this case. And that was required by the rules in order to avoid the motion? Doesn't 191B say that if you want additional discovery prior to the court ruling on the motion that you have to file an affidavit under 191B that says what you want to do and why you want to do it? Your Honor, we asked for a deposition, and it was denied, and we followed the court's order. And that's what we're dealing with now. It's just that we followed the court's order. Judge Snyder denied it. And we were allowed five interrogatories to contest toward immunity. And that's how we landed here today. And as far as the interrogatories are concerned and to... Is that just the nature of the way the procedures are handled in the municipal division? Is it because I know that if you're in the chancery division or the law division, if you don't file a 191B affidavit, you're not getting a deposition. I would say that a 191B affidavit is not... You don't see that happen very often in the municipal division. You make a request, and then you proceed on the hearing. And to make a second request, you would find the same outcome. There's no... I have not had the experience of seeing any 191B affidavits in the municipal division in courtroom 1501. Did you challenge the content of the responses in your response to the 2615, the misnamed motion? I'm not sure that I... What exact... How did you oppose the... What was your response to the motion to dismiss? Your Honor, I believe that the same response was made to all that we construed. It was construed that the 615 was a 619. So they stood on the same response for all of the motions. There was a series of motions that were had. But ultimately, what was argued was that the information that we had showed how there were inconsistencies between the affidavit and in the interrogatories to define whether or not... Because the city was saying that it was a clear-cut case, that this was toward immunity, and the fact of the matter is, in the body of the interrogatories themselves, you can see that they're saying that they're a part of a surveillance team, but then they say they're taking over for a surveillance team. All right. Well, under this 2619, whether or not there was a genuine question of material fact, it's very similar to a summary judgment procedure in that the court doesn't have to take any conclusions that are not supported by specific fact. And the evidence would have to be the kind of evidence that was competently presented at trial. In other words, an officer that would say, I was conducting surveillance without more is not the kind of competent evidence that someone would testify to at trial, unless he described what he was really doing. Because what he's saying is, I was conducting surveillance. But that really doesn't tell us anything. So there was no testimony. There was nothing in these affidavits or interrogatories beyond conclusions that he was conducting a surveillance and he was going to do a takeaway. Is there more there? I don't know. I mean, there was something about the target, though, right? I mean, there is. It identified a target. Well, and moreover, one of the things that you have in Hudson is, it's a discussion of a police officer, I believe it's Officer Lee, who's pursuing a person who's armed and is a homicide offender. And there's a chase going on. And Officer Lee gets involved in a car accident and it's found that Officer Lee is not enforcing the law at the time of the accident because Officer Lee had not responded to dispatch, saying that she was actively a part of the pursuit. And then there was a bunch of other questions where different inferences were drawn between the majority and the dissent. However, in this case, we don't even know, even though he did receive a Nextel call, we don't know whether he responded and said, okay, I'm going to engage in preparing to take over for the surveillance team. We don't know little details like that that are important under a case like Hudson. So without having that deposition, quite honestly, there's just no conceivable legal justification. I don't know if you can really say what you just said based on the affidavit. He specifically says in the affidavit that he was waiting to be, that the team was watching this individual, a specific target. He was waiting to be contacted to take over because what they do is they switch off, right? That's what a take away is. Changing of the guard. Changing of the guard, okay. And then in interrogatory number two, he says, he says, I was on my way to take over the surveillance after I received that Nextel call. So I don't think you can say you don't know that. Well, I think that it's, there's one thing to say that I'm, it's his intention, you have to officially be doing it also. Well, he was on his way to doing it until he made contact with your client's guard. He says he was. Well, there you go. I mean, so the question is, you know, what was he doing to, he says he was preparing to take over. He was not, he says he was a part of a surveillance team, but he was taking over for another surveillance team, which is, there's a lot of loopholes here. There's a lot of things that I don't, I don't think I can answer without speculating. I really just, I can't give you adequate answers to try to fill in these gaps. We can guess, but that's really the heart of this issue here. Was he preparing to take over within 30 seconds or within 10 minutes? He said that he had been waiting for approximately 10 minutes, but he doesn't say when he's going to be taking it over, at what point, on the road, or at a specific place, or any of these things. We don't know the who's, the what's, the where's, the how's. And there's really no conceivable legal justification for why the trial court refused to allow a limited deposition of the defiant whose affidavit was outcome determinative. And the reason that the plaintiff has come forward with this appeal in a case which might otherwise not justify such effort is because unless somebody does this and there's a ruling by the court, this kind of one-sided unfair practice will be visited on Chicago's course litigants over and over, as we see here, where there's just not an adequate opportunity to dispute what's going on with the officer and what he's saying. Do we know how far, is there anything in here that says how far away he was in relation to where he was going to take over this thing?  Was he ten miles away? Was he five miles away? It is not indicated. We don't know the who's, the what's, the where's, or the how's. We don't know what part of the surveillance team he was also. Was he a car that was going to be on the periphery? Was he somebody that was going to support the team in case something happened? Or was he going to be the person that was watching a target? We don't know what role he played in the team. We just don't know. So that's why I told you it's easier for me to say what it's not than what it is. And I can tell you that the cases that we've discussed are cases that it is not. Mostly. Well, it says, if you put one and five together, it says, I was coming out of my parking space to turn northbound onto Costner, and then it says in five, surveillance team for the group of targets suspected of distributing narcotics in the vicinity of Costner and Fifth. But that doesn't really say that that's where they're conducting their surveillance, Costner and Fifth. It's unclear. It's really, you can try to put the pieces of the puzzle together, but there's going to be gaps in the picture, and you're not going to be able to see the whole picture. And we're not looking to conduct a fishing expedition. We're looking for a limited deposition just designed to ask questions specifically about what protocol he was following, and the little who's, what's, where's, when's, and how's, that we just don't have a clear picture of. Nothing that would take an egregious amount of time or effort, just something so that it is clear that he either is or is not enforcing the law. Anything further? Just, I would ask that you remand for further proceedings and an opportunity to dispute the alleged, or the claim of qualified immunity. I thank you very much this morning. All right. The case was well-argued and well-briefed, and we'll take it under advisement.